**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**HARRY L. GOODRICH**
**and AGNES P. GOODRICH**

          **Plaintiffs,**

**v.**                        **Civil Action No. 4:17-cv-00009**

**JOHN CRANE, INC., et al**

          **Defendant.**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO**
**EXCLUDE EVIDENCE AND TESTIMONY REGARDING THE ALLEGED**
**KNOWLEDGE OR NEGLIGENCE OF THE NAVY**

On October 10, 2017, Plaintiffs filed a Motion for Leave to File an Additional Motion for

Partial Summary Judgment pursuant to Local Rule 56(c) (ECF 53) and Plaintiffs lodged with this

Court their Motion for Partial Summary Judgment on John Crane Inc.'s Sophisticated Purchaser,

Government Contractor, and Intervening Negligence/Superseding Cause Defenses (ECF 55) and

a memorandum in support thereof (ECF 56).  By order dated November 28, 2017, this Court

deferred ruling on Plaintiffs' Motion for Leave pending its decision on John Crane's Cross

Motion for Summary Judgment on the statute of limitations (ECF 51).

For the same reasons stated in Plaintiffs' Memorandum in Support of Motion for Partial

Summary Judgment on John Crane's Sophisticated Purchaser, Government Contractor, and

Intervening Negligence/Superseding Cause Defenses (ECF 56), this Court should prohibit any

evidence or testimony regarding the Navy's alleged negligence in this case because, even if true,

it cannot, as a matter of law, exonerate John Crane of its own negligence or breach of maritime

strict liability law, and will only serve to mislead and confuse the jury about the issues in this

case.  In support of this Motion, Plaintiffs incorporate by reference the arguments made in

Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment on John Crane's Sophisticated Purchaser, Government Contractor, and Intervening Negligence/Superseding Cause Defenses (ECF 56) and the exhibits appended thereto. In further support of Plaintiffs' motion, Plaintiffs state as follows:

## BACKGROUND

Harry Goodrich served in the U.S. Navy from 1959 to 1963. From June 1959 to August 1960, he worked as a fireman's apprentice and fireman in the forward fireroom of USS Corry (DD 817). From August 1960 to June 1961, he worked as a machinist mate third class (MM3) in the forward engine room until June 1961. Goodrich was then transferred to USS Harlan Dickson (DD 708), where he worked as a MM3 in the forward engine room until September 1962, when he was transferred to USS Yosemite (AD-19). On USS Yosemite, Goodrich worked in the valve shop where he tested and repaired valves that were removed from other ships and brought to Yosemite's valve shop for repairs. (ECF 1, Complaint at 3, ¶ 13; ECF 56-1, Affidavit and Report of Capt. William Lowell ("Lowell Affidavit"), at 8-14).

Goodrich and his coworkers, Barry Goodrich and William Kaczor, testified that they routinely worked with asbestos gaskets and packing sold by John Crane. (ECF 56-1, Lowell Affidavit, at 8-14 (citing deposition testimony of Goodrich and his coworkers)). Goodrich further testified that he did not see any asbestos warnings on any products during his Navy service. (ECF 56-2, Goodrich DBE Transcript, 5/2/2017, at 97-99).

Harry Goodrich's claims against John Crane are based on John Crane's failure to warn him about asbestos hazards inherent in the products John Crane supplied to the Navy. These claims sound in general maritime negligence and maritime strict liability as restated in Restatement (Second) of Torts § 402A (ECF 1, at 8-15, Counts I and II).

As early as 1947, the Navy Shipment Marking Handbook, NAVSANDA Pub. No. 9, required manufacturers to put tags on "[i]nside containers, packages, or unpackaged items" and required that "[a]ny necessary instruction for assembling of material or warning as to handling, storage, and operation will be packed with such material." (ECF 56-1, Lowell Affidavit, at 19-20). Additionally, at about the same time, the Manufacturing Chemists Association, Inc. ("MCA"), published "Warning Labels: A Guide for the Preparation of Warning Labels for Hazardous Chemicals, Manual L-1." (ECF 56- 3, "MCA L-1 Guide" adopted 1945, 1953 revision). The MCA L-1 Guide was an industry standard for formatting warnings on packages of hazardous chemicals.

The MCA L-1 Guide defined "dust" as "Solid particles generated by handling, crushing, grinding, rapid impact, detonation and decrepitation of organic or inorganic materials such as rock, ore, metal, coal, wood, grain, etc."  (ECF 56-3, at 14). Additionally, the MCA L-1 Guide "required warnings and minimum information regarding dangers from dusts." (ECF 56-4, Report and Affidavit of David Rosner ("Rosner Affidavit"), at 29, ¶¶ 50-51).

In 1951, Illinois adopted the MCA L-1 warning principles in the Illinois Occupational Health Act, Part J, Rules and Regulations Relating to Labeling in the Use, Handling and Storage of Substances Harmful to the Health and Safety of Employees (June 15, 1951) (ECF 56-5, "Illinois Labelling Act"). This statute became effective in 1952 and included the MCA L-1 Guide's definition of dust and its requirement to warn of harmful dusts. (ECF 56-4, Rosner Affidavit, at 29).  John Crane Inc. has been headquartered in Illinois since at least the 1940s. Other entities, such as the American Industrial Hygiene Association and the American Conference of Governmental Industrial Hygienists, also adopted the MCA L-1 warning guidelines. (Ex. 4, Rosner Affidavit, at 29).

John Crane's competitor, Johns-Manville interpreted the Illinois Labeling Act, and the MCA L-1 Guide on which it was based, to require warnings on asbestos products. (ECF 56-6, *Letter from Arthur Fisk of Johns-Manville to J. C. Kelleher, May 2, 1952* (stating "[t]he word 'Asbestos' is not particularly referred to in the regulation but the following [definition of dust], in the opinion of the Legal Department, covers asbestos"); ECF 56-7, *Letter from Kenneth Smith of Johns-Manville, Jan. 27, 1964* (referring to the format of the MCA to format an asbestos warning); Ex. 8, *Letter from William W. Lanigan of Johns-Manville to W.L. Kreutz, Esq. of Owens Corning, Aug. 18, 1964* (noting that Johns-Manville relies on the MCA L-1 Guide for asbestos warnings)).

In 1951, the Department of Defense ("DOD") published MIL-STD-129, Marking for Shipment and Storage. (ECF 56-1, Lowell Affidavit, at 20). MIL-STD-129 was mandatory for use by the Departments of the Army, the Navy, and the Air Force. *Id.* As of 1957, MIL-STD-129B incorporated by reference the MCA L-1 Guide, requiring:

> 2.2.10.4.3 *Hazardous chemicals.* All package units of hazardous chemicals to be ultimately issued to the consumer who may be exposed to such chemicals under conditions of ordinary use shall have affixed thereto such warning labels as may be required in accordance with the Manufacturing Chemists Association's Manual L-1, A Guide for Preparation of Warning Labels for Hazardous Chemicals or in accordance with appropriate Department of Defense instructions as published which shall take precedence.

(ECF 56-1, Lowell Affidavit, at 22 (citing MIL-STD-129B)). The Navy gasket specification, MIL-A-17472 (NAVY) (1953)—which provided the performance requirements for the compressed asbestos sheet gasket material that John Crane sold to the Navy—incorporated by reference the version of MIL-STD-129 in effect at the time of invitation of bids, and required that all gaskets supplied to the Navy "shall be marked in accordance with Standard MIL-STD-129." (ECF 56-9, at 1 ¶ 2.1 & 7, ¶ 5.2). Additionally, in 1956, the Secretary of the Navy issued a letter on "Uniform labeling program for hazardous industrial chemicals and materials." The

Navy's letter states:

> This Instruction is not intended to govern:
> a. The type of labels to be affixed by the manufacturer.  (These are governed by State and Federal laws and regulations depending on the nature of the material and whether the shipment is interstate or intrastate. In addition, most major manufacturers of chemicals abide by the "Warning Labels Guide" published by the Manufacturing Chemists' Association.)

(ECF 56-10, SECNAV 5100.8, Sept. 24, 1956).

John Crane admitted in its Answers to Interrogatories in the Newport News, Virginia asbestos litigation that there was no difference between the composition or packaging of the asbestos-containing products it sold to the U.S. Government or its agencies and the asbestos-containing products it sold in the commercial, non-governmental market. (ECF 56-14, John Crane's 8th Suppl. Resp.to Plaintiff's First Set of Interrogatories, at 25-26, ¶¶ 36, 37). And in 2013, John Crane's most knowledgeable person, George Springs, testified:

> Q.    And John Crane had its name all over the product in multiple places all over each sheet, correct?
>
> A.    Correct.
>
> Q.    And so there was no reason why John Crane could not have put a warning label on the asbestos sheet packing material, is there?
>
> THE WITNESS: They could have put anything on it they wanted to put on it.

(ECF 56-15, Excerpts of Testimony of Springs in *Farmer v. Waco, Inc.*, at 79).

John Crane disclosed Captain Margaret McCloskey as its Navy expert in this case. Nothing in McCloskey's report addresses the MCA L-1 Guide or MIL-STD-129 or any other DOD or Navy warning specification. (ECF 56-16, McCloskey Report). And nothing in the reports of John Crane's other experts in this case addresses the MCA L-1 Guide, MIL-STD-129, or any other DOD or Navy warning specification. (ECF 56-17, Report of Henshaw; ECF 56-18 Report of Crapo; ECF 56-19 Report of Beasley; ECF 56-20 Report of Hesselink). Additionally,

John Crane has not identified a fact witness to testify regarding the MCA L-1 Guide or MIL-STD-129 or any other DOD or Navy warning specification. John Crane also did not provide any rebuttal reports addressing the opinions of Plaintiff's Navy expert, Capt. Lowell, relating to warnings or MIL-STD-129 or attempting to address or rebut any of the other labeling or warnings documents contained or referenced in Capt. Lowell's report.

John Crane's Navy expert, McCloskey, testified that an asbestos sheet gasket supplier, like John Crane, could have included a warning with products it sold to the Navy.

> Q. Paragraph 5.1.2, level C, see where it says, "Asbestos sheet shall be packaged in accordance with the supplier's standard practice"?
>
> A. Yes.
>
> Q. If the supplier, in his normal standard practice, included a warning on the packaging, this paragraph would allow the supplier to put a warning with the Navy packaging, too; correct?
>
> A. Yes.

(ECF 56-21, Deposition of McCloskey in *Chapman v. John Crane,* Aug. 4, 2015, at 94; *see also id.* at 181 (testifying that the 1956 SECNAV letter on labeling requirements, MIL-STD-129, and MIL-STD-1341, did not prevent suppliers from including warnings on their products)). McCloskey also admitted that, as of 1957, MIL-STD-129B directed suppliers to include warnings:

> Q. Okay. As of at least 1957, would you agree that suppliers were being told by the Navy to include warnings on packaging; correct?
>
> THE WITNESS: For hazardous chemicals.
>
> Q. And if the L-1 manual includes toxic dust as a hazardous chemical, it would require warnings for toxic dust; correct?
>
> THE WITNESS: If it did, yes.

(ECF 56-21 at 99). McCloskey further admitted that she did not know one way or another whether the MCA L-1 Guide required warnings for toxic dust, (ECF 56-21 at 99), and, therefore,

she is unable to rebut the opinions of Dr. Rosner relating to the MCA L-1 Guide.  McCloskey also testified that she does not contend that the Navy knew about the hazards of asbestos and negligently or deliberately chose not to do anything about them:

> Q.  Okay. Is it your testimony that the Navy knew about the hazards of asbestos and chose not to do anything about it?
>
> A. No. That's not my contention.

(ECF 56-21, Deposition of McCloskey in *Chapman v. John Crane,* Aug. 4, 2015, at 160).

Kenneth Nelson was a Navy industrial hygienist who was present at the 1942 conference on the Minimum Requirements for Safety and Industrial Health in Contract Shipyards. In 1985, he testified:

> Q.  All right. So would I be correct that you know of no reason why it was either not feasible or not possible for asbestos manufacturers to put a warning on the cartons of their asbestos products that the product could possibly be dangerous; is that correct?
>
> A.  It could have been done. It was not done.

(ECF 56-11, *Excerpts of Testimony of Kenneth Nelson*, at 269-70).  Henry Murad was an engineer for the Naval Ship Engineering Center, a division of BUSHIPs, from approximately 1965 to 1979. (ECF 56-12, *Excerpts of Testimony of Henry Murad*, at 13, 18, 21). In 1979, he testified that "the specifications did not prohibit anyone, any supplier, from putting any kind of warning on" their products.  (*Id.* at 336-337). Alvin Anceravage was head of Naval Sea Systems (NAVSEA) Command's Packaging and Container Section. (ECF 56-13, *Excerpts of Testimony of Alvin Anceravage,* in *Buskirk v. US* and *Corsette v. Johns-Manville Corp,* at 7, 125 (Aug. 29, 1979)). In 1979, he testified that he knew of nothing "in the regs or specs or standards that [he had] been discussing today [that would] preclude a manufacturer from" warning.  *Id.* He further testified that MIL-STD-129 set the "minimum requirements" for package labels and that "[t]he contractor can put anything on a package." (*Id.* at 118-119).  He concluded by stating he had

"never seen any objection to a manufacturer using his commercial package so long as his commercial package met the requirement of the packaging requirements of that commodity." (*Id.* at 119).

During her deposition in *Parker v. John Crane, Inc.* on December 21, 2015, John Crane's Navy expert, McCloskey, testified that, while she was in the Navy, she would have obeyed warnings and required her subordinates to obey warnings as well.

> Q. Okay. And I think maybe you're still focused just on the warning signs regarding the storage areas and I'm broadening my question. With regard to any asbestos warnings, to the extent it was in your division or your realm of supervision, am I correct that you would have obeyed those warning signs?

> A. Yes.

> Q. And you would have required your subordinates to obey those warning signs, too, correct?

> A. Yes.

(ECF 56-22, McCloskey Deposition in *Parker v. John Crane,* 12/21/15, at 101-103). She agreed that the health of the service members and civil servants was a general concern throughout the Navy, and that the Navy would not want to needlessly expose service members or civil servants to hazards that are avoidable.

> Q. And when you were in the Navy you certainly were concerned about the health of the service members and civil servants that were working for you, correct?

> A. Yes.

> Q. It was a general concern throughout the Navy?

> THE WITNESS: Yes.

> ...

> Q. So again, generally, you would agree that the Navy wouldn't want to needlessly expose service members or civil servants to hazards that are avoidable, correct?

> THE WITNESS: I think you asked me if I agreed to that and the answer would be yes.

(ECF 56-22 at 44-46 (form objections omitted)).

John Crane claims that it first became aware that exposure to, or use of, asbestos or asbestos-containing products may be hazardous "from general news media surrounding the passage of OSHA, and at a meeting of the Mechanical Packing Association in approximately 1970." (ECF 56-14, 8th Suppl. Reponses to Plaintiff's First Set of Interrogatories, at 12-13, ¶14).[1] McCloskey testified that, while parts of the Navy recognized earlier than 1970 that certain asbestos products may pose a hazard, "there was not a consensus throughout the Navy bureaus that would have led to a proclamation by big Navy–Secretary of Navy or CNO–whoever was going to release the instruction" that asbestos was dangerous until the 1970s.

> Q. Okay. Well let me just try this: So if I understand you correctly, it's not so much that the Navy as a cohesive body, the secretary of Navy on down, knew that asbestos was hazard – hazardous; it's that parts of the Navy you believe, earlier on in the '50s and later, thought that it might be hazardous. Is that what you're saying?
>
> A. To certain workers.
>
> Q. To certain workers.
>
> A. Right.
>
> Q. Okay. I understand your qualifications. But what I see a lot of is that the Navy knew–and I think what you're telling me is that parts of the Navy knew certain things but the Navy itself didn't accept all of that until the '70s; is that correct?
>
> A. I think that that would be a fair summary.

(ECF 56-21 at 163-164 (form objections omitted)).  McCloskey further admitted that it would be "speculation and surmising on the part of anybody to fill in" the gaps in the evolution of the Navy's knowledge of asbestos hazards. (ECF 56-21, McCloskey Deposition in *Chapman v. John Crane.*, 8/4/15, at 159-160).

---

[1] However, John Crane's most knowledgeable person, George Springs, testified that JCI required its employees to wear masks in the 1940s when working with raw asbestos (ECF 56-15, Deposition of George Springs, 42-44). But, for purposes of this motion, John Crane should be held to its sworn Interrogatory answer.

In 1975, Roger Beckett, a Navy industrial hygienist, performed air sampling during machine and hand stamping of 1/16 inch sheet gasket material and found air concentrations of 5 and 3 asbestos fibers per cubic centimeter of air respectively. (ECF 56-23, Beckett Letter 12/12/75). Based on these tests, Becket, on behalf of the Commanding Officer of the Naval Regional Medical Center in Bremerton Washington, sent a letter to the Commander of Puget Sound Naval Shipyard, advising him that "gasket makers must be considered as asbestos workers" and that "[m]edical examination and process controls must be in accordance with reference (b)," which was NAVSHIPYDPUGET INST 6260.11, Part B, Chapter 1. (*Id.*). John Crane has no evidence that the Navy appreciated the hazards of asbestos gaskets and packing before Beckett's letter in 1975.

Prior to the 1980s, John Crane never included warnings about the hazards of asbestos with or on the asbestos-containing gaskets or packing it sold to the Navy. (ECF 56-14, John Crane's Suppl. Responses to Plaintiffs' First Set of Interrogatories, at 9-10, ¶ 12). Prior to the 1980s, John Crane never including warnings regarding the hazards of asbestos with or on the asbestos-containing gaskets or packing that it supplied to the non-government commercial market. (*Id.*).

## ARGUMENT

**I.  The Sophisticated Purchaser Defense is not Available to John Crane and, therefore, Testimony or Evidence Attempting to Establish that the Navy Was a Sophisticated Purchaser is Irrelevant and Will only serve to Confuse and Mislead The Jury.**

The sophisticated purchaser defense alleges that Goodrich's employer, the Navy, was a sophisticated purchaser of John Crane's asbestos products and that John Crane was entitled to rely upon this sophisticated purchaser to warn Goodrich of the dangers of the asbestos in John Crane's products.  Judge Robreno—the federal judge presiding over the asbestos multi-district litigation (MDL)—held that the sophisticated purchaser defense is not available, as a matter of

law, in maritime asbestos cases because it has no tendency to further longstanding maritime policy. *Mack v. G.E.* Co., 896 F. Supp. 2d 333, 346 (E.D. Pa. 2012). Rather, the sophisticated purchaser defense "would discourage work at sea and, in turn, impair rather than promote maritime commerce," and it would "have the effect of leaving [plaintiff's] (and their survivors) with no remedy." *Id.* at 342. Judge Robreno noted that this is particularly so in cases involving Navy seamen because Navy seamen are prohibited from suing the Navy—the alleged sophisticated purchaser—by the *Feres* doctrine. *See id.* at 342, n. 8; *see also Feres v. U.S.,* 340 U.S. 135 (1950) (immunizing the United States from suit by service members for injuries arising from military service). Thus, the sophisticated purchaser defense would leave seaman—who have traditionally been considered the wards of the admiralty and, therefore, entitled to special protection by admiralty courts—without a remedy. *See Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 246 (1942); *In re: Asbestos Prod. Liab. Litig.* (No. VI), 873 F.3d 232, 238 (3d Cir. 2017) (noting in a maritime asbestos case that "maritime law is deeply concerned with the protection of sailors, due to a historic and 'special solicitude for the welfare of those men who undertook to venture upon hazardous and unpredictable sea voyages.'"). Judge Robreno's ruling has not been appealed and continues to govern the thousands of cases that remain on the MDL's maritime docket. Accordingly, because this defense is not available to John Crane as a matter of law any evidence attempting to prove this defense is irrelevant, would be unfairly prejudicial to Plaintiffs and would serve only to mislead and confuse the jury.

Even if this Court does not follow *Mack,* John Crane cannot prove this affirmative defense as a matter of law. Courts have, for decades, struck the sophisticated purchaser defense as a matter of law in asbestos cases. *See, e.g., Willis v. Raymark Indus.*, 905 F.2d 793, 796-97 (4th Cir. 1990), *reh'g denied*, 1990 U.S. App. LEXIS 18483 (4th Cir. Sept. 26, 1990) (*en banc*);

*Oman v. Johns-Manville Sales Corp.*, 764 F.2d 224 (4th Cir. 1985) (*en banc*), *cert. denied*, 474 U.S. 970 (1985); *Neal v. Carey Canadian Mines, Ltd.*, 548 F. Supp. 357, 369 (E.D. Pa. 1982) *aff'd sub nom. Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3d Cir. 1985); *see also In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 837 (2d Cir. 1992) (holding, "[w]e find no merit in defendants' contention that they justifiably relied on the Navy to communicate potential hazards to those who would ultimately work with defendants' asbestos-containing products" under the sophisticated purchaser defense); *Adkins v. GAF Corp.*, 923 F.2d 1225, 1231 (6th Cir. 1991); *Roney v. Gencorp*, 654 F. Supp. 2d 501, 507 (S.D.W. Va. 2009) (noting that "[p]roof of extensive knowledge [on the part of the employer] alone, however, is not enough to support an assertion of the defense under *Oman* and *Willis.* The manufacturer must offer proof that it was aware of the employer's sophistication and that this awareness translated into reasonable reliance."); *Russo v. Abex Corp.*, 670 F. Supp. 206, 208 (E.D. Mich. 1987) (noting that it "is clear that a supplier/manufacturer's duty to warn is not discharged simply because the user is sophisticated."); *see also* 1 T. Schoenbaum, Admiralty & Maritime Law, § 5-7 (5th ed. & cum. sup. Nov. 2013) (noting that "the sophistication of an intermediary (or employer)—or the warning of that intermediary (or employer) by a manufacturer or supplier—does not preclude potential liability of the manufacturer or supplier").

The sophisticated purchaser defense is derived from the Restatement (Second) of Torts, § 388, cmt. n. Under that section, a supplier's liability may be extinguished only if (1) the employer knew the dangerous nature of the product and (2) the defendant can show that it reasonably relied upon the employer to protect its employees against the particular hazard. *See* Restatement (Second) of Torts § 388 cmt. n (1965); *Willis,* 905 F.2d at 796. Courts employ a multi-factor balancing test derived from comment n of § 388. The six factors evaluated are:

(1) the dangerous condition of the product;

(2) the purpose for which the product is used;

(3) the form of any warnings given;

(4) the reliability of the third party as a conduit of necessary information about the product;

(5) the magnitude of the risk involved; and

(6) the burdens imposed upon the supplier in requiring that he directly warn all users.

*Oman*, 764 F.2d at 233.

In both *Oman* and *Willis*, the Fourth Circuit found that the Eastern District of Virginia correctly struck the sophisticated purchaser defense as a matter of law in asbestos product cases.

As the Court stated in *Oman*:

In this case the product, because it contained asbestos fibers, was very dangerous. The burden on the manufacturers in placing a warning on the product was not great. The employer was unaware of the danger until 1964. Finally, once the employer became aware of the potential danger it failed to convey its knowledge to its employees. We cannot say that the district court erred in refusing to give the charge requested by the manufacturer under the set of facts involved in this case.

*Oman*, 764 F.2d at 233. This approach was reaffirmed by the Fourth Circuit in *Willis.*

Importantly, this defense is not available unless <u>the defendant knew</u> — "*prior to and during the time the workers were exposed*" to the hazardous product — that the employer was *already* aware of the hazards of the products and would take steps to warn and protect the ultimate user from those products. *Willis*, 905 F.2d at 797 (emphasis in original). The supplier, therefore, "fulfills its duty to the ultimate consumer **only** if it ascertains (1) that the distributor to which it sells is adequately trained, (2) that the distributor is familiar with the properties of the product and the safe methods of handling it, and (3) that the distributor is capable of passing this knowledge to the consumer." *Little v. Liquid Air Corp.*, 952 F.2d 841, 851 (5th Cir. 1992), *rev'd en banc on other grounds,* 37 F.3d 1069 (5th Cir. 1994) (emphasis added).

Hindsight does not apply here—the defendant must ascertain the employer's knowledge and capability prior to, or at the time of, the exposure.  As *Willis* noted, the defendant's proffer of evidence did "not address one critical point: whether [the defendant] knew the extent of DuPont's knowledge during or prior to the period of the plaintiff's exposure." *Willis*, 905 F.2d at 797; *Eagle-Picher Indus., Inc. v. Balbos*, 604 A.2d 445, 465 (Md. 1992) ("Defendants do not set forth any evidence or proffered evidence that they knew that Bethlehem knew of the danger."). *Willis* concluded that the defendant could **"not escape liability by reconstructing the past to show merely what the employer/purchaser knew"** during the relevant time period in order to rely upon DuPont's knowledge of such hazards. *Id* (emphasis added); *Solly v. Manville Corp. Asbestos Disease Fund*, 966 F.2d 1454 (2nd Cir.), *cert. denied*, 506 U.S. 954 (1992) (stating that "it is irrelevant that defendant learned in hindsight that [plaintiff's employer] may have been aware of a potential danger in exposure to defendant's product"). Thus, *Willis* and *Solly* make it unmistakably clear that a manufacturer "may not escape liability by reconstructing the past to show merely what the employer/purchaser knew." *Willis*, 905 F.2d at 797.

John Crane contends that its asbestos products were never dangerous because they did not release significant amounts of dust and, therefore, warnings were not necessary, at all. John Crane also claims in sworn Answers to Interrogatories that it did not know about the hazards of asbestos until 1970, seven years after Goodrich *left* the Navy. If John Crane did not know about the hazards of its asbestos products during Goodrich's exposure period, then it necessarily follows that John Crane did not know what, if anything, the Navy knew about the hazards of its asbestos products during that period. And if John Crane did not know what the Navy knew at the relevant time, John Crane could not have reasonably relied upon the Navy to protect Goodrich. But, even if they did know at the relevant point in time, because John Crane contends its

products do not require a warning, John Crane cannot now say that it relied on the Navy to warn about a hazard that John Crane does not acknowledge. So, even assuming this defense is available under general maritime law, John Crane cannot prove the sophisticated purchaser defense, as a matter of law and this Court should grant Plaintiffs' motion to exclude any evidence tending to prove this irrelevant defense.

II.     **John Crane, Inc. Cannot Prove The Government Contractor Defense As A Matter Of Law And, Therefore, Any Evidence In Furtherance Of This Defense Is Irrelevant And Would Only Serve To Mislead And Confuse The Jury.**

To prove the affirmative government contractor defense, John Crane must prove by a preponderance of the evidence that (1) the United States approved reasonably precise specifications; (2) the product conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the product that were known to John Crane but not to the United States. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). These are conjunctive elements, and the proof must relate to the particular defect at issue. *Bailey v. McDonnell Douglas Corp.,* 989 F.2d 794, 801 (5th Cir. 1993) (noting that a defendant must prove all three conjunctive elements of the claim and that the proof must relate to the specific defect at issue). Importantly, *Boyle* tethered the government contractor defense to the discretionary function immunity of the Federal Tort Claims Act; it is nothing more than a derivative form of the FTCA discretionary function immunity. Thus, a government contractor should not be afforded immunity unless the federal officer making the underlying decision would have immunity.

First, John Crane cannot demonstrate, as a matter of law, that the government ever actually exercised its discretion with regard to any warnings or lack of warnings on John Crane's asbestos products. Here, the specific defect at issue is John Crane's complete failure to warn of the hazards of asbestos.  So the defense requires that John Crane prove that its complete failure

to warn was compelled by the discretionary decision of a federal officer. But John Crane has no evidence that any DOD or other federal official ever made a discretionary decision impairing John Crane's ability to include warnings with its products.

Far from it, even John Crane's own Navy expert, McCloskey, agrees that John Crane (a) was not prevented from including warnings, and (b) could have included warnings had it chosen to do so. And John Crane's own most knowledgeable person, George Springs, conceded that John Crane put its name all over its gasket material and could have put any other language it wanted on that gasket material as well. In fact, John Crane admits in its answers to interrogatories that it supplied its asbestos containing packing and gaskets to the Navy in the same packaging that it used in its non-government, private commercial sales, and McCloskey admitted that, under those circumstances, if John Crane put a warning on its commercial packaging, it could have included the same warning on products it sold to the Navy. John Crane has disclosed no expert or factual witness and has disclosed no other evidence to the contrary. **Since John Crane has no evidence of a single instance in which the government actually made a discretionary decision pertaining to asbestos warnings on John Crane's products, John Crane cannot, as a matter of law, prove the *Boyle* defense**.

The fact that John Crane could have supplied any warnings that it supplied with its non-governmental commercial products demonstrates that there was no conflict between John Crane's state law duty to warn and any prohibitions imposed by the United States. *See Boyle*, 487 U.S. at 509 (noting that when the "contractor could comply with both its contractual obligations and the state-prescribed duty of care" nobody would "suggest[] that state law would generally be pre-empted in this context"). *Boyle's* rationale was centered on whether a tort requirement **conflicts with a significant federal interest to the extent that it should be**

**preempted by federal common law.** *See Boyle*, 487 U.S. at 508-512. "Stripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.'" *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990). "*Boyle* displaces state law only when the Government, making a discretionary, safety-related military procurement decision ***contrary to the requirements of state [or maritime] law***, incorporates this decision into a military contractor's contractual obligations, *thereby limiting the contractor's ability to accommodate safety in a different fashion*." *Id.* (emphasis added). Since John Crane never warned at all, it must prove that this complete failure to warn was dictated by DOD. *See, e.g., Glein v. Boeing Co.*, Action No. 10-452-GPM, 2010 WL 2608284 (S.D. Ill. Jun. 25, 2010) (*see* ECF 56-25).

This is critical because the government contractor defense is a defense of excuse—the defendant admits it knew about the hazards of the product and that it failed to warn of these hazards, but contends that this failure is excused *because* it could not deviate from reasonably precise DOD specifications relating to warnings. Thus if John Crane hopes to hide behind DOD, it must prove that its underline complete failure to warn Goodrich of the underline asbestos hazards in its products was prompted by a federal decision; not merely that the government considered warnings in a vague, nonspecific manner. "Put differently, under *Boyle,* for the military contractor defense to apply, government officials ultimately must remain the agents of decision." *In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 630 (2d Cir. 1990).

> *Boyle*'s requirement of government approval of "reasonably precise specifications" mandates that the federal duties be imposed upon the contractor. The contractor must show that whatever warnings accompanied a product [or did not accompany a product] resulted from a determination of a government official, *see Boyle,* 108 S.Ct. at 2518 ("feature in question [must be] considered by a Government officer, and not merely by the contractor itself"), and thus that the Government itself "dictated" the content [or the absence] of the warnings meant to accompany the product.

*In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d at 630. "Stripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.'" *Id.*

But, as McCloskey admitted, DOD did not dictate or prohibit warnings. And, as McCloskey admitted, the Navy, and DOD as a whole, had a consistent, significant interest in ensuring that military and civil service workers were warned and that its personnel were not needlessly exposed to hazards that were avoidable. This is reflected in every federal labeling standard from at least the 1940s forward—including the Navy Shipment Marking Handbook, MIL-STD-129, MIL-A-17472 (NAVY) (1953), and SECNAV 5100.8 (1956)—which consistently told John Crane to warn. (*See* ECF 56-1, Lowell's Affidavit, at 18-42). These standards told John Crane to provide these warnings for "consumers" and "users" of the products. This interest is precisely in sync with the tort law duty to warn. John Crane has disclosed no witness and no evidence that even suggests that any federal contracting officer, specification or standard precluded John Crane from warning. Goodrich was exposed to asbestos because of *John Crane's* decision not to warn—not some phantom discretionary decision by a federal officer. *See Boyle*, 487 U.S. at 509.

For these reasons, a number of courts have granted plaintiffs' motions for summary judgment on this defense. *See, e.g., Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1487-88 (5th Cir. 1989) (approving district court's finding that the "government contractor defense was not available to General Dynamics" as a matter of law); *McCormick v. C.E. Thurston & Sons, Inc.*, 977 F. Supp. 400, 403 (E.D. Va. 1997) ("[I]n thousands of asbestos cases that have preceded, the United States District Court for the Eastern District of Virginia has determined that the government contract defense is not available"); *Dorse v. Armstrong World Indus., Inc.*, 716 F. Supp. 589, 592 (S.D. Fla. 1989) *aff'd sub nom. Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d

1487 (11th Cir. 1990) (granting a plaintiff's motion for summary judgment because there was no conflict between the defendant's duty to warn and any federal requirement).

Moreover, those federal courts that have found the defense not even colorable at the removal stage have, essentially, granted summary judgment in the plaintiff's favor in those cases. *See, e.g., Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 137 (D. Mass. 2009);[2] *Westmiller v. IMO Indus., Inc.*, C05-945RSM, 2005 WL 2850334 (W.D. Wash. Oct. 20, 2005) (*see* ECF 56-26) (finding that "Viad has failed to submit evidence that it was subject to reasonably precise specifications with respect to warnings during the relevant time period"); *Nguyen v. Allied Signal, Inc.*, C 98-03616 SI, 1998 WL 690854 (N.D. Cal. Sept. 29, 1998) (*see* ECF 56-27) (remanding case because, "[a]s defendants have made no showing that their contractual obligations to the government specifically prohibited them from placing warnings on their products, they cannot raise the government contractor defense in this failure to warn case."); *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 200, 201 (D. Mass. 2008) (noting that an affiant's opinion that the military "'would not have approved any warnings'" even if they had been suggested, "amount to speculation"). As the Supreme Court stated, "[i]f the evidence is merely colorable . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

John Crane also cannot prove *Boyle's* second prong, which requires that John Crane

---

[2] Indeed, the court in *Holdren* found that the government contractor defense was not even colorable in a similar case, because as here, the defendants:

> submitted no evidence that the Navy expressly prohibited asbestos warnings by manufacturers; no evidence that they ever attempted to warn about asbestos on products destined for the Navy; no evidence that the Navy ever rejected any other manufacturer's proposed asbestos warning; and no evidence that defendants warned of asbestos on other, non-military equipment they produced during the same period, by contrast to the equipment they supplied to the Navy. Finally, they offer no persuasive evidence of an overall Navy-wide policy that would have conflicted with manufacturer asbestos warnings.

*Holdren*, 614 F. Supp. 2d at 137.

conform to the government's specifications. As demonstrated above, the sole evidence in the record of this case relating to actual government warning specifications and standards is the affidavit of Plaintiffs' Navy expert, Captain Lowell and the exhibits attached thereto. (ECF 56-1). His affidavit demonstrates that the Navy Shipment Marking Handbook, MIL-STD-129, and every other standard, specification and policy letter that deals with warnings or labeling from the 1940s through the 1970s consistently told contractors to warn.  John Crane concedes that it never included any warnings regarding asbestos hazards until at least 1980—twenty years after Mr. Goodrich's exposure to John Crane's products. Thus, John Crane necessarily concedes that it did not comply with the government's reasonably precise specifications requiring contractors to warn.

Finally, John Crane cannot prove *Boyle's* third prong because John Crane has admitted that it had no idea what the Navy knew about the hazards of asbestos gaskets and packing at the time it sold the asbestos gaskets and packing that Goodrich used. Just as with the sophisticated purchaser defense, discussed above, this cannot be viewed in hindsight.  If John Crane claims it did not know about the hazards of its products at the time it sold them to the Navy, it cannot claim to know what the Navy did or did not know about asbestos hazards at that time, either.

Importantly, "[i]n cases involving products alleged to be defective due to inadequate warnings, 'the manufacturer is held to the knowledge and skill of an expert. . . . The manufacturer's status as expert means that at a minimum he must keep abreast of scientific knowledge, discoveries, and advances and is presumed to know what is imparted thereby.'" *Foster v. Am. Home Prod. Corp.*, 29 F.3d 165, 169–70 (4th Cir. 1994) (quoting *Borel v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076, 1098 (5th Cir.1973), *cert. denied,* 419 U.S. 869 (1974)). As *Borel* noted, this expert status "is relevant in determining (1) whether the

manufacturer knew or should have known the danger, and (2) whether the manufacturer was negligent in failing to communicate this superior knowledge to the user or consumer of its product." *Borel*, 493 F.2d at 1089. Here, since John Crane was the manufacturer,[3] it is legally held to the status of an expert with regard to the design and hazards inherent in its products. In contrast, as a mere consumer of those products, the Navy is not held to that standard.

In sum, John Crane has no evidence to prove the three elements of the *Boyle* government contractor defense. Even John Crane's own expert agrees that the United States did not prohibit John Crane from warning. Accordingly, this Court should exclude any testimony or evidence relating to this defense because it will only confuse and mislead the jury, unreasonably lengthen this trial and unfairly prejudice Plaintiffs.

### IV.    John Crane Cannot Prove That The Navy Was A Superseding Cause Of Goodrich's Exposure And Disease As A Matter Of Law.

Under maritime law, the doctrine of intervening negligence and superseding cause applies only when "the injury was actually brought about by a later cause of independent origin that was not foreseeable." *Exxon Co., U.S.A. v. Sofec, Inc.,* 517 U.S. 830, 837 (1996); *see also Evergreen Int'l, S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 312 (4th Cir. 2008); *Napier v. F/V DEESIE, Inc*., 454 F.3d 61, 68 (1st Cir. 2006) ("An intervening cause is a new and independent cause of the harm which is neither anticipated nor reasonably foreseeable by the defendant: it must operate independently of and occur after the conclusion of the defendant's negligent conduct."); *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 417 (3d Cir. 2006) (maritime case noting that the intervening negligence must "bring[] about a harm different from

---

[3] JCI manufactured the asbestos-containing packing that it supplied to the Navy. JCI "rebranded" the asbestos sheet gasket material with its own name and symbol number and sold it to the Navy as though it was its own product. "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement (Second) of Torts § 400; *see also Foster*, 29 F.3d at 169–70 (applying the manufacturer-expert standard to a generic drug manufacturer who did not formulate the drug or its original label).

the harm that the defendant's negligence would have caused," be 'extraordinary' rather than 'normal' under the circumstances," and be "independent of any situation created by the defendant's negligence"); *Stolt Ach., Ltd. v. Dredge B.E. Lindholm*, 447 F.3d 360, 369 (5th Cir. 2006); *Chicago v. M/V Morgan*, 375 F.3d 563, 575 (7th Cir. 2004) (affirming district court's decision striking intervening negligence defense because it only applies where "the injury was actually brought about by a later cause of independent origin that was not foreseeable."); *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 838-39 (2nd Cir. 1992) (to "supersede a defendant's negligence, an intervening cause must be neither normal nor foreseeable" and holding that "[t]he Navy's conduct in failing to protect its workers from the hazards of asbestos exposure, while reprehensible, was anything but unforeseeable"); *Adkins v. GAF Corp.*, 923 F.2d 1225, 1231 (6th Cir. 1991) ("[S]ince Celotex's negligence was foreseeable by ACL, that negligence was not an intervening, superseding cause of Adkins's injury and does not relieve ACL of liability"); *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 495 (3d Cir. 1985) ("Only where the third party's action is 'so extraordinary as to not have been reasonably foreseeable' might such action constitute a superseding cause."); 1 T. Schoenbaum, *Admiralty and Maritime Law* § 5-3, at 262-63 (5th ed. 2011). In short, the causal connection between John Crane's negligence and Goodrich's injuries may be broken by another actor's negligence <u>only</u> if that negligence so entirely supersedes John Crane's negligence that it alone, without John Crane's negligence contributing in the slightest degree, caused the injury. *Sofec, Inc.,* 517 U.S. at 837; *Napier*, 454 F.3d at 68; *Evergreen Int'l*, 531 F.3d at 312; *Stolt*, 447 F.3d at 369; 1 T. Schoenbaum, *Admiralty and Maritime Law* § 5-3, at 262-63.[4]

---

[4] The intervening negligence defense is only relevant if JCI was negligent in its failure to warn. Consequently, under the procedural posture of this Motion, it must be assumed that JCI negligently failed to warn Goodrich. *See Sofec, Inc.,* 517 U.S. at 837-38 ("Superseding cause

In this case, any alleged negligence on the part of the Navy would have brought about a harm identical to the harm Goodrich suffered as a result of John Crane's own failure to warn. Goodrich's exposure and disease was the "normal result of" a failure to warn, whether by John Crane or the Navy or both. And the Navy was John Crane's customer; hence the Navy's failure to pass along a warning to Goodrich that the Navy never received from John Crane was entirely foreseeable.  In short, "[a] subsequent negligent act does not excuse prior negligence except in most unusual circumstances." *Stolt,* 447 F.3d at 369.  Moreover, when an intervening event is one that in the natural and ordinary course of things is not improbable and John Crane's negligence is a link in the chain of causation, the intervening negligence can only operate as a possible a concurring cause, not a superseding cause. Further, if the intervening event was put into operation by John Crane's initial failure to warn, it is foreseeable and will not supersede the effect of John Crane's negligence.

Asbestos product liability cases substantially identical to this case have been prosecuted in the Eastern District of Virginia, in the Joint Southern and Eastern Districts of New York, in Washington State, Connecticut and elsewhere.  In those cases, the federal judges have consistently held that intervening negligence could not be established merely because the Navy knew about the hazards of asbestos and failed to warn or protect a plaintiff. *See, e.g., Glover v. Johns-Manville Corp.*, 525 F. Supp. 894, 910 (E.D. Va. 1979), *aff'd,* 662 F.2d 225 (4th Cir. 1981) (ruling that manufacturers were not entitled to indemnity from the United States for asbestos judgment because United States' negligence was, at best, passive and a result of the manufacturer's negligent failure to warn); *In re Brooklyn Navy Yard Asbestos Litig.,* 971 F.2d

---

operates to cut off the liability of <u>an admittedly negligent defendant</u>, and there is properly no apportionment of comparative fault where there is an absence of proximate causation." (emphasis added)).

831, 838 (2nd Cir. 1992); *In re General Dynamics Asbestos Cases, CML No. 1, Ward, et al. v. Johns-Manville,* CA Nos. H-76-54, H-76-60, H-75-327 (D. Conn. Jun 20, 1979) (Ex. 28); *In Re Asbestos Cases, C/P 77-1, DeShazo, et al. v. Owens Corning Fiberglass Corp.,* C.A. 87-722-N, et al. (E.D. Va. Nov. 14, 1988) (Ex. 29); *Hoglund v. Raymark Indus., Inc.*, 749 P.2d 164, 170 (Wash. 1987).  The rationale for these uniform rulings is that an employer's failure to warn would not have prevented a worker from being alerted to the dangers of asbestos products if the suppliers of those products had satisfied their independent duty to warn foreseeable users of their asbestos products.

As John Crane's Navy expert and corporate representative both admit, John Crane's packages and the products, themselves, could easily have carried adequate warning labels and safety instructions. As the Fourth Circuit explained, "In this case the product, because it contained asbestos fibers, was very dangerous. The burden on the manufacturers in placing a warning on the product was not great." *Oman*, 764 F.2d at 233; *see also Willis,* 905 F.2d at 797 ("No warnings were even attempted, and Celotex may not now argue that warnings would probably have had little effect."). If asbestos manufacturers, like John Crane, had provided appropriate warnings and safety instructions, Goodrich would have had the ability to protect himself. John Crane should have foreseen that if it failed to adequately warn users of the latent dangers of its products, then employers may also fail to alert or protect those same workers. Thus the Navy's negligence was, by definition, concurring negligence and it could not, as a matter of law, have constituted a superseding cause. *See e.g., Balbos*, 604 A.2d at 222-226 (finding that the district court did not err by refusing to instruct the jury on superseding cause). This conclusion is inescapable because John Crane's contribution to <u>creating</u> the danger by its own failure to warn cannot be eliminated by the alleged negligent failure of the Navy to <u>remedy the same foreseeable</u>

<u>danger</u> caused by John Crane's initial negligence. Therefore, the Navy's intervening negligence, if any, is, at best, a concurring cause of Goodrich's mesothelioma and such a concurring cause, by definition, cannot be a superseding cause of Goodrich's injuries, as a matter of law.

John Crane has claimed in the past that its theory is that the Navy retained such detailed control over the work place and its service members that a manufacturers' warning would have been ineffective. In other words, John Crane claims that, even if it had included a warning, the Navy would have required Goodrich and his crewmates to ignore those warnings and work with John Crane's asbestos-containing products without protective gear anyway, thus negating any causal link between the absence of a warning and Goodrich's exposure. At best, this argument is purely speculative. Because John Crane never warned during the applicable time period, it is impossible to surmise whether the Navy would have compelled Goodrich to ignore such a warning and work with John Crane's products without adequate protective measures.

But we do not have to guess here. John Crane's own Navy expert, McCloskey, testified that had she would have obeyed warnings and required her subordinates to obey the warnings as well. And she agreed that the health of the service members and civil servants was a general concern throughout the Navy and that the Navy would not want to needlessly expose service members or civil servants to hazards that are avoidable. *See supra*. Her testimony is corroborated by the fact that, when the Navy's industrial hygienist at Puget Sound, Roger Beckett, finally realized the level of airborne asbestos released from stamping asbestos gasket material, the Commanding Officer of the Naval Regional Medical Center in Bremerton Washington, sent a letter to the Commander of Puget Sound Naval Shipyard, advising him that "gasket makers must be considered as asbestos workers" and must observe all protective measures that other asbestos workers were observing at that time. In short, John Crane's own Navy expert, McCloskey, does

*not* contend that the Navy knew about the hazards of asbestos and negligently or deliberately chose not to do anything about them and, therefore, the only witness John Crane has disclosed who could possibly testify to such a theory, refutes it.

### V.    John Crane is Really Hoping to Mislead and Confuse the Jury into Awarding a De Facto Several Liability Verdict in Conflict With Maritime Law's Age-Old Joint And Several Lability Rule.

What John Crane really hopes to do is confuse the jury by offering reams of irrelevant evidence against the Navy in the hopes that the jury may consciously or unconsciously apportion some of the fault against the Navy. This is unfairly prejudicial to Plaintiffs.  Though the Navy has waived its sovereign immunity in certain limited circumstances under the FTCA, the Public Vessel Act, or the Suits in Admiralty Act, it is absolutely immune in this case. This case involves injury to a service member arising from service-related exposure, and Goodrich and his survivors are, therefore, prohibited from suing the U.S. Navy under the *Feres* doctrine. *See Feres,* 340 U.S. AT 146.  Likewise, John Crane cannot sue the U.S. Navy for contribution or indemnity, either. *See Stencel Aero Eng'g Corp. v. U. S.*, 431 U.S. 666, 673-74 (1977) ("We conclude, therefore, that the third-party indemnity action in this case is unavailable for essentially the same reasons that the direct action by Donham is barred by *Feres*. . . . [H]ence, the right of a third party to recover in an indemnity action against the United States . . . must be held limited by the rationale of *Feres* where the injured party is a serviceman."); *Vulcan Mats. Co. v. Massiah*, 645 F.3d 249, 267 (4th Cir. 2011) (holding that under the *Feres-Stencel Aero* doctrine, the U.S. has not waived its sovereign immunity for contribution or indemnity actions by third parties sued by service members). Accordingly, John Crane cannot obtain judgment against the Navy.

Instead, John Crane wants to obtain a *de facto* allocation of fault by inducing the jury to award a <u>several liability</u> verdict in violation of maritime law's centuries-old joint and several liability rule. "For more than a century, general maritime law has held joint tortfeasors jointly

and severally liable for all of the plaintiff's damages suffered at their hand." *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1116 (5th Cir. 1995) (*en banc*); *see also Norfolk & Western Rwy Co. v. Ayers*, 538 U.S. 135, 163 (2003) (citing *The "Atlas"* 93 U.S. 315 (1876)) (noting that "joint and several liability is the traditional rule" in admiralty law and under FELA); *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220-21 (1994) (reaffirming that the traditional maritime rule is joint and several liability); *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 273 n. 30 (1979) (holding that joint and several liability remains "the general rule" in maritime and a person who is liable for causing a plaintiff's indivisible injury is "entirely liable even if other factors concurred in causing the injury"). Under joint and several liability, a plaintiff may "sue in a common-law action all the wrong-doers, or any one of them at his election," and "he is entitled to judgment in either case for the full amount of his loss." *The "Atlas"* 93 U.S. at 315. Nonimmune defendants, like John Crane, are required to absorb the shares of judgment-proof tortfeasors, like the Navy. *McDermott,* 511 U.S. at 221 ("When the limitations on the plaintiff's recovery arise from outside forces, joint and several liability makes the other defendants, rather than an innocent plaintiff, responsible for the shortfall.").

Additionally, maritime law does not allow allocation of fault against an entity that is not a party to the case because such an allocation results in a several liability verdict and shifts the risk of non-collection to the plaintiff, in violation of longstanding maritime joint and several liability law. *See, e.g., Coats*, 61 F.3d at 1116 (noting that when a defendant attempts to allocate damages during a plaintiff's tort case, it is asking the court to "shift the risk of noncollection to the plaintiff" and this is not permitted in maritime law); *id.* at 1125 (noting that under general maritime law, "the concern that the innocent plaintiff receive full recovery of his damages was offered as one of the primary justifications for joint and several liability."). In *Ebanks v. Great*

*Lakes Dredge & Dock Co.,* Eleventh Circuit held it "was reversible error for the trial court to inject the question of comparative degrees of causation as to a non-party, not present before the court, and therefore unrepresented." *Ebanks v. Great Lakes Dredge & Dock Co.*, 688 F.2d 716, 718 (11th Cir. 1982), *cert. denied*, 460 U.S. 1038 (1983). Since "the plaintiff is entitled to recover, as stated by the court, against either of several tortfeasors, without regard to the percentage of fault, it was error for the trial court to distract the juror's attention by requiring it to allocate the degree of fault between the defendant and a non-party." *Id.* at 722. In *Joia v. Jo-Ja Service Corp.,* Second Circuit held that "in a maritime negligence action, it was error for the trial court to submit to the jury special interrogatories to determine the comparative degrees of fault between a defendant and a non-party." *Joia v. Jo-Ja Serv. Corp.*, 817 F.2d 908, 917 (2d Cir. 1987). And the Eighth Circuit held that no allocation could be made against a non-party and that the defendant "company could have timely filed a cross complaint against the medical providers, however, or attempted to join them itself. Such procedures are the appropriate means to allocate payment of damages where there is a missing tortfeasor. . . . Under the circumstances and established law, it is appropriate to hold the (defendant) company liable for the total amount of damages not attributable to Alholm." *Alholm v. Am. Steamship Co.*, 144 F.3d 1172, 1181 (8th Cir. 1998).

If John Crane is allowed to amplify the negligence of the judgment-proof Navy without any hope of actually proving superseding cause, sophisticated purchaser or government contractor immunity, it places this Court and Plaintiffs in a difficult position. The Navy cannot be placed on the verdict form for an allocation of fault because it is an immune non-party. *See Edmonds*, 443 U.S. at 270-71; *Stencel*, 431 U.S. at 673-74; *Ebanks*, 688 F.2d at 718. So a jury presented with evidence of Navy fault has nothing that it can do about it other than attempt to

reduce John Crane's share of the damages in proportion to what the jury *feels* should be the Navy's share of the fault. This, however, results in a several liability verdict and violates the maritime joint and several liability rule. On the other hand, if this Court places the Navy on the verdict form after John Crane has amplified the Navy's negligence, any attribution of fault to the Navy would then have to be reapportioned to John Crane under maritime law's joint and several liability rule. This may inflate the damages that John Crane would be required to absorb under maritime joint and several liability and it would set this case up for John Crane to appeal the Court's erroneous inclusion of the Navy on the verdict form.

This is precisely the dilemma in which a federal district court found itself in a maritime case. *See Evans v. BV Shipping Co. Lombok Strait*, CIV.07-3139RMB/KMW, 2009 WL 3233524, at *4 (D.N.J. Oct. 5, 2009) (*see* ECF 56-30). In *Evans*, the defendant attempted to prove that the intervening negligence of an immune employer constituted a superseding cause. The court waited until after evidence had been admitted to find that the employer's intervening negligence could not constitute a superseding cause of the plaintiff's injury. The defendant then offered a verdict form that included apportionment only for itself and the comparative negligence of the plaintiff—not the immune employer. According to the court, "Defendant has sought to elicit testimony that Plaintiff's injury was caused not by Defendant's negligence, but by the negligence of Plaintiff <u>and the stevedoring company</u> [the plaintiff's employer]. In other words, Defendant has implicated the stevedoring company in order to establish that its own negligence did not proximately cause Plaintiff's injury." *Evans*, CIV.07-3139RMB/KMW, 2009 WL 3233524, at *4 (D.N.J. Oct. 5, 2009)(emphasis added) (Ex. 30). Having allowed that evidence, the court found that a verdict form that did not include the immune employer would be "illogical and invites extraordinary juror confusion." *Id.* The bell had been rung. According to the court:

If the Court were to adopt Defendant's approach [of not including the employer on the verdict form], it is unclear how a jury believing Defendant and the stevedoring company to be joint-tortfeasors would go about allocating fault. Believing it unfair to burden Defendant with paying for the stevedoring company's negligence, a jury might attribute the stevedoring company's fault to Plaintiff, or it might divide the absent stevedoring company's fault evenly between the two parties. A jury should not, however, be invited to apportion fault based upon its sense of what outcome would be most fair; rather, a jury should apportion fault based upon its understanding of the facts—that is, based upon which actors it believes were *actually at fault.*

*Id.* at *6. The court felt that the only appropriate solution was to violate maritime law's apportionment rules (and the Supreme Court's holding in *Edmonds*, 443 U.S. at 256), by including the immune employer on the verdict form, only to reallocate the employer's share to the defendant.

John Crane is inviting this Court to face the same dilemma faced by the court in *Evans*, and this Court should not accept the invitation. John Crane wants this Court to either (a) commit reversible error by inviting the jury to nullify maritime joint and several liability by allowing John Crane to prove the Navy's concurring negligence with the hope that the jury will award a several verdict, or (b) commit reversible error by including the Navy on the verdict form contrary to maritime apportionment law so that the jury has an opportunity to do something with all of the irrelevant Navy negligence evidence it hears. Both options violate maritime law. This Court can avoid both options, and an unreasonable lengthening of the trial of this case, by excluding irrelevant and unfairly prejudicial evidence of alleged Navy negligence, government contractor immunity or sophisticated purchaser status when John Crane cannot prove any of these affirmative defenses as a matter of the law and facts in this case.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Partial Summary Judgment on John Crane's Sophisticated Purchaser, Government Contractor, and Intervening

Negligence/Superseding Cause Defenses (ECF 55), and/or grant the instant Plaintiffs' Motion in Limine to *Exclude Evidence and Testimony Regarding The Alleged Knowledge Or Negligence Of The Navy*.

Respectfully submitted,

By: /s/ William W.C. Harty
Counsel for Plaintiffs

William W.C. Harty, Esq. (VSB # 45447)
Robert R. Hatten, Esq. (VSB # 12854)
Hugh B. McCormick, III, Esq. (VSB # 37513)
Erin E. Jewell, Esq. (VSB # 71082)
PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.
12350 Jefferson Avenue - Suite 300
Newport News, VA 23602
(757) 223-4500 Telephone
(757) 249-3242 Facsimile
pleadings@pwhd.com
wharty@pwhd.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of October, 2017, I electronically filed the foregoing *Memorandum in Support of Motion In Limine to Exclude Evidence and Testimony Regarding the Alleged Knowledge or Negligence of The Navy* with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

| Eric G. Reeves, Esq. | *Counsel for John Crane, Inc.* |
| --- | --- |
| Martin A. Conn, Esq. | |
| Brian J. Schneider, Esq. | |
| **MORAN, REEVES & CONN, P.C.** | |
| 100 Shockoe Slip, 4th Floor | |
| Richmond, VA  23219 | |

By: /s/ William W.C. Harty
Counsel for Plaintiffs